UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**PEGASUS IMAGING CORPORATION,**

    **Plaintiff,**

v.                                       Case No.: 8:08-CV-1770-T-30EAJ

**ALLSCRIPTS HEALTHCARE
SOLUTIONS, INC., et al.,**

    **Defendants.**
_____/

## ORDER

Before the court are Defendants' **Motion to Quash Subpoenas and for a Protective Order** (Dkt. 32) and Plaintiff's **Response** (Dkt. 33).

### I. Background

Plaintiff is a manufacturer and distributor of computer software (Dkt. 1 at 2). Defendant Allscripts Healthcare Solutions, Inc. ("AHS") provides healthcare-related software applications to physicians (Id.). Defendant Allscripts, LLC ("Allscripts") provides computer hardware and software, as well as related maintenance and support services, to physicians (Id.).

Plaintiff alleges that in 2002 it licensed the use of its "Barcode Xpress" software ("the Software") to Advanced Imaging Concepts, Inc. ("AIC") (Id. at 8). AHS acquired AIC in 2003 (Id. at 3; Dkt. 13 Ex. C at 2) and Plaintiff concedes that AHS succeeded to any rights AIC had to use the Software (Dkt. 1 at 18). Nonetheless, Plaintiff asserts that AHC, without permission from Plaintiff, transferred the Software to Allscripts (Id. at 9). Plaintiff insists that Allscripts, without a license to do so, subsequently incorporated the Software into Allscripts' own software products which it then sold and distributed (Id.). Plaintiff's complaint includes claims against AHS for breach

of license agreement; vicarious and contributory copyright infringement; and violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 et seq. Plaintiff further asserts claims against Allscripts for copyright infringement; violation of Florida's Uniform Trade Secrets Act, Fla. Stat. § 688.001 et seq.; and violation of the Lanham Act, 15 U.S.C. § 1051 et seq.

On or around February 2, 2009, Plaintiff served several of Defendants' physician clients with subpoenas <u>duces</u> <u>tecum</u> (Dkt. 32 at 2; Dkt. 32 Ex. 1A; Dkt. 32 Ex. 1B).[1]  Each subpoena seeks documents pertaining to communications between the physician and Defendants. The subpoenas also seek information concerning various software programs that might be in the physician's possession.

## II. Analysis

### a. Defendants' Standing to Challenge the Subpoenas under Rule 45, Fed. R. Civ. P.

Defendants submit that they have standing to challenge the subpoenas on behalf of their physician customers because Defendants have a "personal right and proprietary interest in the documents and information requested by the subpoenas" (Dkt. 32 at 7). Plaintiff responds that Defendants have not sufficiently established a "personal right" in the information sought (Dkt. 33 at 8). Plaintiff further contends that Defendants' standing to challenge the subpoenas is questionable given that only one of the physician customers has objected to compliance (<u>Id.</u> at 8-9).

Pursuant to Rule 45(c)(3)(B)(i), Fed. R. Civ. P., a court may, on motion, quash or modify a

---

[1] Defendants contend that they did not receive prior notice of the subpoenas as required by Rule 45(b)(1), Fed. R. Civ. P. Yet they concede they were "served with the subpoenas at the same time they were served on Allscripts' customers" (Dkt. 32 at 9). Plaintiff's simultaneous service of the subpoenas was sufficient to satisfy the "prior notice" requirement in Rule 45(b)(1). See <u>Fla. Media, Inc. v. World Publ'ns, LLC</u>, 236 F.R.D. 693, 695 (M.D. Fla. 2006) ("This Court rules that 'prior notice' to other parties is satisfied when notice is given simultaneously with the service of the subpoena.").

subpoena that requires disclosure of a trade secret or other confidential research, development, or commercial information. However, a party has standing to challenge subpoenas issued to non-parties only where the party "alleges a 'personal right or privilege' with respect to the subpoenas." Auto-Owners Ins. Co. v. Se. Floating Docks, Inc., 231 F.R.D. 426, 429 (M.D. Fla. 2005) (citing Brown v. Braddick, 595 F.2d 961, 967 (5th Cir. 1979)). To establish a "personal right" in a non-party's business records, a party must show a legitimate expectation of privacy in the records or provide a factual showing that the records are confidential or proprietary. Id.

Plaintiff's subpoenas include fifteen paragraphs of "documents or things subpoenaed" (Dkt. 32 Ex. 1; Dkt. 32 Ex. 2).[2] Among other things, Plaintiff seeks documents reflecting communications between the physician customers and Defendants pertaining to this case, Defendants' software licensing, or Plaintiff's software products. Plaintiff also requests that the physician identify the version or release of, and provide the code, serial number, or keys for, certain of Defendants' software products possessed by the physician. Finally, Plaintiff asks for documentation related to software licensing fees paid to Defendants; the physician's possession of Plaintiff's software; the physician's possession of Defendants' software; and the physician's possession of certain software products.

In a declaration attached to Defendants' motion, Allscripts' Solutions Management Director, Joseph Luber ("Mr. Luber"), avers that Allscripts considers most of this information confidential. Specifically, Mr. Luber insists that Allscripts "generally considers the identify of its clients, its licensing agreements, and all other customer, reseller, support and services agreements, and some other contracts, as confidential business information" (Dkt. 32 Ex. 4 at 2). This expectation

---

[2] These paragraphs will hereinafter be referred to as Paragraph 1 - Paragraph 15.

purportedly extends to any code, serial numbers, or keys related to Allscripts' software products. Mr. Luber asserts that Allscripts' clients must "agree to strict confidentiality protections set forth in confidential licensing agreements" (Id.).

Defendants have sufficiently established that they have a legitimate expectation of privacy in the contents of their licensing agreements with the physician customers (Paragraph 1). Defendants also have standing to challenge Paragraph 2 insofar as it applies to confidential communications. Finally, Defendants may challenge Paragraph 11 which requests documents reflecting the calculation of licensing fees or other compensation paid to Defendants.

By contrast, Defendants do not have standing to challenge Paragraph 3, which seeks documents and communications related to this cause of action; Paragraph 4, which seeks documents pertaining to the subpoena, this cause of action, or Plaintiff's software; Paragraph 12, which seeks documents pertaining to Plaintiff's "Barcode Xpress" program; Paragraph 13, which seeks documents pertaining to the physical location of Defendants' software products in the physician's possession; Paragraph 14, which seeks documents pertaining to the location of specific software products in the physician's possession; or Paragraph 15, which seeks an electronic copy of any of Plaintiff's "Barcode Express" software in the physician's possession (Dkt. 32 Ex. 1; Dkt. 32 Ex. 2). Defendants do not have a personal right or privilege in any of this information.

Finally, Defendants have standing to challenge Paragraphs 5-10 to the extent they seek Defendants' software code, serial numbers, or keys. However, Defendants have not established standing to challenge identification of the version or release of the particular software programs in the physician's possession.

**b. Defendants' Challenge to the Subpoenas Under Rule 26(c), Fed. R. Civ. P.**

Defendants submit that, in addition to seeking confidential and/or proprietary information, the subpoenas seek information that is irrelevant or could be obtained with less burden and greater convenience from Defendants (Dkt. 32 at 10).

Pursuant to Rule 26(c), Fed. R. Civ. P., "a party or any person from whom discovery is sought may move for a protective order." A party "clearly" has standing to move for a protective order regarding third-party subpoenas if the subpoenas seek irrelevant information. Auto-Owners, 231 F.R.D. at 429. Moreover, for good cause, the court may enter a protective order to relieve a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Id. "The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements' supporting the need for a protective order." Id. at 429-30 (quoting United States v. Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Because Paragraph 2 seeks documents related to any communication whatsoever between the physician customers and Defendants, it almost certainly includes documents and/or communications that are not relevant to this cause of action. Moreover, to compel the physician customers to respond to this request would be unduly burdensome. Accordingly, the motion to quash is granted as to Paragraph 2 of the subpoenas.

However, aside from confidentiality concerns, Defendants have failed to demonstrate good cause for entry of a protective order regarding any of the remaining Paragraphs. Indeed, any cause for issuing a protective order is undercut by the fact that only one of the physician customers has formally objected to the subpoenas and that objection concerned health privacy laws (Dkt. 33 at 9). See Auto-Owners, 231 F.R.D. at 429 ("Defendants do not have standing to quash the subpoenas on

grounds of oppression and undue burden placed upon the third parties where the non-parties have not objected on those grounds.") (citing 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure Civil 2d § 2035).

As for Defendants' confidentiality concerns, these concerns are outweighed by Plaintiff's need to determine whether its software has been incorporated into Defendants' software products. Perhaps anticipating Plaintiff's need to make this determination, Defendants assure the court that "[i]f the parties agree on a confidentiality agreement, Defendants will submit a proposed consent order regarding confidential information on behalf of the parties in the near future" (Dkt. 32 at 20). Given Defendants' representations, a stipulated confidentiality agreement may obviate Plaintiff's need to obtain confidential information from Defendants' physician customers. The court will afford the parties an opportunity to enter into a stipulated confidentiality agreement regarding Defendants' software code, licensing agreements, compensation agreements, or other confidential information.

## Conclusion

Pursuant to Rule 45(c)(3)(B), Plaintiff's subpoenas are modified to eliminate Paragraphs 1, 2, and 11. Moreover, the portion of Paragraphs 5-10 requesting Defendants' software code, serial numbers, or keys is also eliminated. The parties shall stipulate to a confidentiality agreement regarding this information. In the meantime, Defendants' physician customers shall respond to the remaining Paragraphs of the subpoenas.

Accordingly, and upon consideration, it is **ORDERED and ADJUDGED** that:

(1) Defendants' **Motion to Quash Subpoenas and for a Protective Order** (Dkt. 32) is **GRANTED IN PART** as to Paragraphs 1, 2, and 5-11 of Plaintiff's subpoenas; and

(2) With regards to the material which Defendants indicate is privileged, confidential,

proprietary, or trade secret, on or before April 17, 2009, the parties shall file a joint motion asking the court to approve a stipulated confidentiality agreement.[3]

**DONE** and **ORDERED** in Tampa, Florida on this 3rd day of April, 2009.

_____
ELIZABETH A JENKINS
United States Magistrate Judge

---

[3] Nothing in this order shall authorize any party to file under seal, absent further court order, any confidential discovery material with the Clerk of the Court or at trial, as such filings are subject to greater scrutiny due to the common law right to inspect and copy judicial records and public documents. See In re Alexander Grant & Co., 820 F.2d 352, 355 (11th Cir. 1987), aff'g 629 F. Supp 593, 597 (S.D. Fla. 1986); Local Rule 1.09, M.D. Fla.