UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PEGASUS IMAGING CORPORATION,
a Florida Corporation,

      **Plaintiff,**

      **vs.**

**ALLSCRIPTS HEALTHCARE
SOLUTIONS, INC.,**
a Delaware Corporation, and
**ALLSCRIPTS, LLC,** a Delaware
Limited Liability Company,

      **Defendants.**

_____/

**Case No. 8:08-cv-1770-T-30 EAJ**

**JURY TRIAL DEMANDED**

**INJUNCTIVE RELIEF
REQUESTED**

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Pegasus Imaging Corporation ("Pegasus") respectfully submits the following memorandum of law in opposition to the Motion for Partial Summary Judgment (Dkt. 163) filed by Defendants Allscripts Healthcare Solutions, Inc., n/k/a Allscripts-Misys Healthcare Solutions, Inc. ("AHS") and Allscripts, LLC ("Allscripts") (collectively, "Defendants").

### STATEMENT OF THE NATURE OF THE MATTER BEFORE THE COURT

Pegasus and Defendants have filed cross-motions for summary judgment. Pegasus' motion and supporting memorandum (Dkt. 166, "Pegasus' Motion"), incorporated herein by reference, requests partial summary judgment in Pegasus' favor on Count I, Count II, Count III, and Count VI. Defendants' motion and supporting memorandum (Dkt. 163, "Defendants' Motion") requests partial summary judgment in Defendants' favor. As set forth herein, the existence of overwhelming evidence supporting each element of Plaintiff's claims for relief

defeats Defendants' Motion. Many key facts which defeat Defendants' Motion are set forth in the Statement of Facts in Pegasus' Motion (pp. 2-7), and such Statement of Facts is hereby incorporated by reference.   Pegasus notes additional facts of record throughout this memorandum. As explained in Plaintiff's Motion, in accord with the uncontradicted evidence, if either side is entitled to judgment in its favor, it is Pegasus, not Defendants.

ARGUMENT

I.   **COPYRIGHT INFRINGEMENT**

A.   ***Pegasus' copyright infringement claims are not barred by the AIC License***

In Defendants' Motion, Defendants challenge the completely unremarkable proposition that a Plaintiff can maintain a claim for breach of license and copyright infringement.[1] Defendants' position is antithetical to the vast majority of case law. *See Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008); *Graham v. James*, 144 F.3d 229, 236-37 (2d Cir. 1998); *S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081 (9th Cir. 1989). Software licenses, by their nature, lay on top of property rights of copyright law. *See* Raymond T. Nimmer, *The Law of Computer Technology* § 7:147 (3d ed., Thomson/West 2009). A breach of a copyright license creates the potential of liability for both contract *and also* property rights under copyright law. *Id*. Both forms of action may exist in a given case. *Id*. As explained in Pegasus' Motion (pp. 8-13), the AIC License has been breached numerous times and in repeated ways.

---

[1] Incidentally, Defendants cite to *MCA Television Ltd. v. Public Interest Corp.*, 171 F.3d 1265, 1275 (11th Cir. 1999) to support this position. Defendants omitted (without ellipses) the following language from the indented quote (Dkt. 163, p. 10):  ***"Of course, copyright protections remain in the background to ensure that licensees do not use materials in ways that exceed the scope of their licenses."*** *Id.* at 1275 (emphasis supplied). Ultimately the Court was not requiring that the infringement claim prevail over the contract claim (or vice versa).

The AIC License is a copyright license. The license (or permission) expires if the licensee fails to abide by the terms of the license. *Jacobsen*, 535 F.3d at 1380; *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999). If a license is limited in scope and the licensee acts outside the scope, the licensor can bring an action for copyright infringement. *Id.* As the Second Circuit noted in *Gilliam v. American Broadcasting Companies, Inc.*, 538 F.2d 14, 21 (2d Cir. 1976), the "rationale" for such decisions is "the need to allow the proprietor of the underlying copyright to control the method in which his work is presented to the public" and "the ability of the copyright holder to control his work remains paramount in our copyright law." *Id.* "[C]opyright licenses are assumed to prohibit any use not authorized." *S.O.S.*, 886 F.2d at 1088. Properly interpreted, the AIC License defines the scope of the license grant to AIC (as explained in Dkt. 166 at pp. 8-13).[2] Thus, once AIC exceeded its limited rights to copy and distribute the SSXBarcode in the manner described in the AIC License, AIC had no permission to copy or distribute the SSXBarcode. Moreover, AHS, Allscripts and any other related third-parties had absolutely no right whatsoever to copy and distribute SSXBarcode and therefore are infringers.

Where a licensee violates a license agreement by failing to satisfy a condition to the license, it follows that the rights dependent upon satisfaction of such unfulfilled condition have not been effectively licensed; thus the licensee is then without authority and continued use by the licensee constitutes infringement. *Graham v. James*, 144 F.3d 229, 236- 37 (2d

---

[2] Defendants contend that by initiating the lawsuit and bringing a breach of contract claim, Pegasus has "acknowledged that AIC's rights under the license were effectively transferred to [AHS]." However, the basis for bringing a breach of contract count is the fact that via the merger between AIC and AHS, AHS is legally responsible for AIC's liabilities, including breach of the AIC License. Moreover the fact that Pegasus sent a letter to Allscripts on July 28, 2008 only further demonstrates that Pegasus was unclear as to the essential fact of how Defendants obtained Pegasus' software. *See* Berlin Depo., pp. 152:15-153:20.

Cir. 1998); *Costello Publ'g Co. v. Rotelle*, 670 F.2d 1035, 1043 (D.C. Cir. 1981) (same). "A condition has been defined as 'any fact or event which qualifies a duty to perform.'" *Graham*, 144 F.3d at 237 (quoting *Costello Publ'g Co.*, 670 F.2d at 1045 n.15). The AIC License Agreement expressly states: "AIC agrees that the terms, *conditions* and value of this agreement, as well as the PIC CODE, are valuable to both parties and are confidential and proprietary information not to be disclosed." This language clearly prohibits the disclosure of Pegasus' SSXBarcode and further evidences that the AIC License was non-transferable. Further, the AIC License provides multiple express conditions, including conditions specific to AIC (*e.g.*, the grant was only to AIC, was only for AIC products, required AIC to distribute the AIC products, and required AIC to provide attribution) and AIC's failure to abide by the conditions, lay the foundation for AIC's (as well as AHS's and Allscripts') copying of SSXBarcode being unauthorized and hence copyright infringement. *See Jacobsen*, 535 F.3d at 1380-82 (use out of compliance with attribution condition was violation of federal copyright law).

Moreover, simply the failure to report and pay for installations may be sufficient to constitute unauthorized use of SSXBarcode. In *Photofile, Inc. v. Graphicomp Sys.*, 1993 WL 375769, at *3 (N.D. Ill. September 22, 1993), for example, the court noted that:

> "[B]reach of the licensing agreement might also constitute copyright infringement if the breach were material or if it resulted in a failure to satisfy a condition to the license." As discussed above, payment of the fees owed under the licensing agreement might be considered a condition of the license, such that failure to pay would result in revocation of the authority to use the photographs that was to be granted by the license.

*Id.* (internal citations omitted). The facts in this matter are abundantly clear that conditions of the AIC License were breached and, therefore, Pegasus can maintain its breach of contract and copyright infringement claims against AHS and Allscripts.

**B.     *Pegasus has established ownership of a valid copyright***

(i)     <u>Evidentiary value of registration</u>

Typically, a holder of a certificate of copyright registration benefits from a rebuttable presumption that the copyright is valid. *See* 17 U.S.C. § 410(c). The burden therefore shifts to the Defendants, who are required to demonstrate that "the work in which copyright is claimed is unprotectable" or, more specifically, to prove that the "copyrighted work actually taken is unworthy of copyright protection." *Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999) (citing *Bateman v. Mnemonics,* 79 F.3d 1532, 1541). If a copyright is registered after the five year period from first publication, the court may give as much weight to the copyright registration as it desires. *Berg v. Symons*, 393 F. supp. 2d 525, 539 (S.D. Tex. 2005). In fact, even if the certificate is issued more than five years after the actual date of first publication, a court may be inclined to give the certificate the weight of prima facie evidence, as permitted under Section 410(c). *See Telerate Systems, Inc. v. Caro,*. 689 F. Supp. 221, 227 n. 7 (S.D. N.Y. 1988); *Cameron v. Graphic Mgmt. Assocs., Inc.,* 817 F. Supp. 19, 23 (E.D. Pa. 1992); *Thimbleberries, Inc. v. C & F Enterprises, Inc.*, 142 F.Supp. 2d 1132, 1137 (D. Minn. 2001). As explained further below Defendants are attempting to perverse the burden of proof in this matter as to Defendants' affirmative defenses.

(ii)     <u>Ownership</u>

Allscripts asserts that the work subject to the copyright in suit was authored by Pegasus Software LLC (hereinafter "the LLC"), and alleges this is a company different from Pegasus.[3] Defendants' argument that Pegasus does not own the copyright in SSXBarcode is meritless. Even though there is uncontroverted testimony from multiple witnesses (*See*, *e.g.*, *see* Dkt 45, Ex. B, Berlin Decl., ¶8; Berlin Depo., pp. 184-186; Isenga Depo., pp. 96:10-98:24; Lubeck Depo., July 16, 2009, pp. 20-21), Defendants assert that Pegasus has not proved ownership of SSXBarcode because Pegasus has failed to produce any written agreement with the LLC transferring the copyright at issue in this action to Pegasus. Defendants are wrong on all counts.

Defendants bear the burden of coming forward with evidence – not mere conjecture – to rebut the statements of ownership in the copyright registrations. Under Section 410(c), the registration can constitute prima facie evidence that Pegasus, as the certificate states, is the owner of the copyrights. Because Defendants failed to come forward with any evidence to challenge the evidence presented by Pegasus, the Court can and should reject Defendants' argument without the need to inquire any further into the record evidence relating to ownership of the copyright. Moreover, it is undisputed that the LLC was formed as an affiliate of Pegasus in 1997, became a wholly owned subsidiary of Pegasus in June of 2001, and was merged completely into Pegasus (the "surviving corporation") on July 23, 2001. *See* Dkt. 165, Ex. A and Plaintiff's Motion for Judicial Notice (Dkt. 184) requesting judicial notice of Florida Statutes and public corporate records maintained by Delaware and Florida

---

[3] This topic is more thoroughly briefed in Plaintiff's memorandum in opposition (Dkt. 165) to Defendants' Motion to Dismiss (Dkt. 142).

that evidence the merger of the two Pegasus companies. The relevant merger documents clearly state:

> All property, rights and privileges, powers and franchises and all and every other interest shall thereafter effectively be the property of the Surviving Corporation as they were of the respective Constituent Companies.

Dkt. 184, Ex. C, p. 2, and Florida merger law dictates that whatever was at one point the LLC is now part of Pegasus. While 17 U.S.C. § 210 requires a writing to transfer ownership of a copyright, no "magic words" are mandated; rather, the parties' intent as evidenced by the writing must demonstrate a transfer of the copyright. *See ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 322 F.3d 928, 931 (7th Cir, 2003) (transfer instrument referring to "all assets" clearly included copyrights); *accord* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 10.03[A][2] at 10-37 ("As with all matters of contract law, the essence of the inquiry here is to effectuate the intent of the parties.").

Further, substantial evidence in the record establishes *without contradiction* that Pegasus is the owner of the copyright in the SSXBarcode: Pegasus programmers and employees helped write, create, develop and update SSXBarcode and the LLC transferred any rights in SSXBarcode to Pegasus. *See* Mann Depo., pp. 18, 20-21, 24-25; Dkt. 165 Ex. B, Lubeck Decl., ¶ 2; Isenga Depo., pp. 40, 43-44, 48-49, 78-80, 96 and 98; and Dkt. 165, pp. 6-7. Therefore, while the SSXBarcode was originally created by Pegasus and what was the LLC, the SSXBarcode became solely owned by Pegasus on July 23, 2001 when the LLC was merged into Pegasus and Pegasus by operation of law became the LLC. Thus, at the time that the copyright registration was filed in 2008, Pegasus was the only owner of all rights subject

to the present action. All testimony and verifiable documents indicate that Pegasus is the owner of SSXBarcode.

C. *Evidence establishes that SSXBarcode is original and protectable*

It is important to recognize that it is now admitted by Defendants that Defendants obtained SSXBarcode from Pegasus and then copied SSXBarcode into the Defendants' source code – ***wholesale and verbatim***. *See* Dkt. 52, Ex. B, Decl. of Tim Miller, ¶¶ 13-14 (AIC "placed the barcoding toolkit into the Impact.MD source code, or 'code base.'"); Miller Depo., pp. 178:18-180:13. Defendants would like to obscure the fact that a complete copy of SSXBarcode is embedded in every copy of the infringing products distributed by Defendants with unnecessary legal analysis and hurdles, but once this Court finds that Pegasus has a valid copyright in SSXBarcode, Defendants have committed copyright infringement of same. Defendants copied all of SSXBarcode, its protectable elements and non-protectable elements (if any), into Defendants' products. Despite these facts, Defendants now essentially ask this Court to make the factual determination that SSXBarcode contains *no protectable elements* (despite the low threshold and ample testimony otherwise) as a matter of law. Glaringly, such a determination would be in direct contradiction with the testimony of Pegasus' expert Mr. Collins, who testified: that in "40 years in the practice of barcode…I haven't seen a product that's more original than the Pegasus product in that time…" Collins Depo., pp. 168:17-169:15 (Dkt. 175, Ex. N).

There is no dispute that SSXBarcode is built upon a source code, the human-readable form of instructions/programming statements that were created or programmed by Pegasus to build SSXBarcode, (Berlin Decl., ¶ 5), and over a period of years, Pegasus has expended

considerable time, money and effort developing SSXBarcode utilizing the creative programming techniques and efficiencies of Pegasus. *See* Berlin Decl., ¶ 6. At least three software developers (Mr. Isenga, Mr. Mann and Mr. Lubeck) have offered testimony in this case regarding their respective roles in the development and creation of SSXBarcode for Pegasus. *See* Dkt. 166, pp. 3-4. Mr. Collins testified that he reviewed the testimony of Mr. Isenga and performed an audit of the source code to determine if Mr. Isenga's testimony regarding the originality was accurate, (Collins Depo., pp. 153:4-154:5), and came away convinced that SSXBarcode was original and unique. *Id.*, pp. 154:5; 177:10-179:14.

The uncontradicted record evidences that SSXBarcode contains many individual elements that exhibit creatively significant aspects sufficient to be protectable under copyright law. The requirement of originality is "not particularly rigorous. Simply stated, original means not copied, and exhibiting a minimal amount of creativity." *Key Publications, Inc. v. Chinatown Today Publishing Enterprises, Inc.*, 945 F.2d 509, 512-13 (2d Cir. 1991) (citing 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 2.01 (1991)). The "requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Feist Publications, Inc. v. Rural Telephone Service Company, Inc.*, 499 U.S. 340, 345 (1991) (quoting 1 M. Nimmer & D. Nimmer, *Copyright* § 1.08[C][1] (1990)).

Furthermore, Defendants overstate Pegasus' burden to establish copyrightability. *See Peter Letterese And Associates, Inc. v. World Institute Of Scientology Enterprises*, 533 F.3d 1287, 1293 (11th Cir. 2008) and *Saregama India Ltd. v. Mosley*, 2009 WL 5083424, at *11

(S.D. Fla. December 23, 2009). To demonstrate originality, Pegasus need only show that SSXBarcode was original (which SSXBarcode is), not that it was unique (which SSXBarcode also is). *Id. See also Peter Letterese,* 533 F.3d 1301 n. 17 (citing *BUC Int'l Corp. v. Int'l Yacht Council Ltd.,* 489 F.3d 1129, 1148-49 (11th Cir.2007) (distinguishing *MiTek Holdings, Inc. v. Arce Eng'g Co.,* 89 F.3d 1548, 1558-59 (11th Cir.1996)). Thus, even if SSXBarcode was common (which it is not), a jury could reasonably conclude based on the testimony of Mr. Isenga, Mr. Mann, Mr. Lubeck and Mr. Collins that SSXBarcode is a distinct *expression* capable of copyright protection. *Id.* However, as detailed above there is undisputed evidence in the record indicating that Plaintiff invested a sufficient amount of creativity in the creation, writing, and development of the code underlying SSXBarcode.

Finally, the level of protectable material required to support a finding of infringement where verbatim copying exists, as is the case here, is very low. "Even for works warranting little copyright protection, verbatim copying is infringement." *Atari Games Corp. v. Nintendo of America, Inc.,* 975 F. 2d 832, 840 (Fed. Cir. 1992); *Kepner-Tregoe, Inc. v. Leadership Software, Inc.,* 12 F. 3d 527, 534 (5th Cir. 1994) (where there is verbatim copying of the expression used to convey the idea, a rigorous application of the abstraction-filtration analysis is not "absolutely necessary"). More to the point, complete copies of SSXBarcode were made and incorporated in Defendants' products so there is no doubt that protectable elements were copied, or there are at least material issues of fact as to whether protected elements of the software were copied. *Fonar Corp. v. Domenick*, 105 F.3d 99, 106 (2nd Cir. 1997) (citing *Triad Sys. Corp. v. Southeastern Express Co.,* 64 F.3d 1330, 1335

(9th Cir.1995) (where defendant copied entire computer program, there was "no doubt that protected elements of the software were copied).

Moreover, due to Defendants' admitted complete and verbatim copying of SSXBarcode' the burden of proof for Defendants' affirmative defenses of merger and *scènes à faire* is Defendants' burden to bear, not Pegasus' burden as Defendants argue. [4] Merger is inapplicable here because the defendants actually copied and distributed SSXBarcode. *See e.g., Matthew Bender*, 158 F.3d at 688 n.12 (stating that "if a defendant has actually copied the plaintiff's work, it is unlikely to be allowed to rely on merger to avoid liability") (citation omitted); *Torah Soft Ltd. v. Drosnin*, 136 F. Supp. 2d 276, 290-91 (S.D.N.Y. 2001) (discussing applicability of merger in computer program context and stating that "wholesale copying" in such cases would not be entitled to benefit of merger doctrine). Likewise, *scènes*

---

[4] The abstraction-filtration analysis, which Defendants invite this Court to apply on approximately 5,000 pages of Pegasus' SSXBarcode source code, requires  the examination of the abstracted elements of the work and exclusion from the infringement analysis elements that are not subject to copyright protection, including expression that is in the public domain, otherwise unoriginal, or subject to the doctrines of merger and *scènes à faire*. *See, Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1372 (10th Cir. 1997).  Also, it is well-established in this Circuit that where applicable the **fact finder** applies the abstraction-filtration analysis ("AF"), not the parties. The Court's opinion in *Bateman* is replete with references to instructing the jury how to perform the AF analysis. *Bateman v. Mnemonics, Inc.,* 79 F. 3d 1532, 1543-46 (11th Cir. 1996). Similarly, in *MiTek,* a bench trial, the district court, as fact finder, was responsible for applying the AF analysis. *MiTek Holdings, Inc. v. Arce Engineering, Inc.,* 89 F. 3d 1548, 1559 (11th Cir. 1996). Even so, Defendants have submitted no evidence that the merger and *scènes à faire* doctrines specifically apply to the underlying source code or object code of SSXBarcode or would otherwise prove that Defendants did not copy protectable portions of SSXBarcode. Moreover, the merger and *scènes à faire* doctrines are ***defenses*** to a claim of infringement. *See, e.g., Ets-Hokin v. Skyy Spirits. Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000) (holding that the two doctrines are defenses to infringement); *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 674, 688 n.12 (2d Cir. 1998) (stating that merger is applied to determine infringement, not validity of copyright); *Reed-Union Corp. v. Turtle Wax. Inc.*, 77 F.3d 909, 914 (7th Cir. 1996) (stating that *scènes à faire* doctrine does not preclude finding of valid copyright); *CCC Info. Servs.. lnc. v. Maclean Hunter Market Reports. Inc.*, 44 F.3d 61, 72 n. 26 (2d Cir. 1994) ("In this circuit, consideration of the merger doctrine takes place in light of the alleged copying to determine if infringement has occurred, rather than in analyzing the copyrightability of the original work.").  The Court properly should place the burden of proving the merger and *scènes à faire* defenses on Defendants. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994); *Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 107 (2d Cir. 1998) (the burden of proof is on the proponent of an affirmative defense to a claim of infringement). Defendants have no factual support that SSXBarcode does not satisfy the originality requirements of copyright law and Defendants mere allegations do not prevent the Court from finding that Pegasus has a valid copyright in SSXBarcode.

*à faire* should be inapplicable due to Defendants' wholesale copying.  For example, there may be protectable expression *within* an unprotectable element to the extent they are given unique, and therefore protectable, expression in an original creation.  *Softel, Inc. v. Dragon Medical and Scientific Communications, Inc.*, 118 F.3d 955, 964 n. 8 (2d Cir. 1997) (Courts may lose sight of the forest for the trees. By factoring out similarities based on non-copyrightable elements, a court runs the risk of overlooking wholesale usurpation of a prior author's expression. ***A verbatim reproduction of another work…is actionable as copyright infringement****.*) (internal citations omitted). *See also* 3 William F. Patry, *Patry on Copyright,* § 9:263 (2009).

Defendants have no factual support that SSXBarcode is not original. Due to Defendants' admitted wholesale and verbatim copying of Pegasus' SSXBarcode (which they obtained from Pegasus), Defendants have committed copyright infringement and the Court should find copyright liability as a matter of law.

## II.   **CONTRACT REMEDY**

In a final effort to impose a different price term than what the AIC License requires, Defendants suggest that the UCC should be invoked to replace the price set forth in the AIC License.[5]  In this case, the UCC is inapplicable because a software license is not a "transactions in goods;" rather, a software license is the conveyance of limited "rights and interest" held in intangible intellectual property.  *Systems Unlimited, Inc. v. Cisco Systems,*

---

[5] Defendants are suggesting the application of Florida Statute § 672.305 to the license agreement at issue in this case for the first time in Defendants' Motion for Partial Summary Judgment.   Although Defendants raised twenty-four (24) affirmative defenses and filed a Second Amended Answer, Affirmative Defenses and Counterclaim (Dkt. 121) as late as November 11, 2009, approximately two weeks prior to the discovery cut-off, Defendants did not plead its applicability to this case, and effectively precluded any discovery on the un-pled new issue.  For that reason alone, Defendants' Motion should be denied.

*Inc.*, 228 Fed.Appx. 854, 859, 2007 WL 1047064, at *4 (11th Cir. 2007).[6]   In *Systems*

*Unlimited, Inc.,* the Eleventh Circuit determined that the UCC does ***not*** apply to software

licenses.   In reaching its determination of the applicability of the provisions of the UCC

covering intellectual property, the Eleventh Circuit  specifically referenced and cited Fla.

Stat. § 672.102, which was identical to its counterpart in California.  The Court explained:

> Systems also argues that the UCC imposes a duty on Cisco to deliver the
> software. We will assume without deciding that Systems' reading of the UCC
> is correct. Even so, the provisions of the UCC only apply to contracts that deal
> predominately with "transactions in goods." Cal. Com.Code § 2102; **Fla. Stat.
> § 672.102.** The sale of intellectual property, which is what is involved here, is
> not a transaction in goods. *See Lamle v. Mattel, Inc.,* 394 F.3d 1355, 1359 n. 2
> (Fed.Cir.2005) (applying California law) ("**a license for intellectual property
> ... is not a sale of goods**"); *see generally* Daniel R. Cahoy, *Oasis or Mirage?:
> Efficient Breach as a Relief to the Burden of Contractual Recapture of Patent
> and Copyright Limitations,* 17 Harv. J.L. & Tech. 135, 163 (Fall 2003)
> ("**intellectual property or other information cannot be a 'good' as defined
> by the UCC**"). Thus, the UCC does not apply. (emphasis supplied).

Defendants cite to only one reported decision *Tingley Systems, Inc. v. Healthlink, Inc.,* 509 F.

Supp. 2d 1209 (M.D. Fla. 2007) for the proposition that Florida Statute § 672.305 applies to

software license agreements, but that case is distinguishable.   *Tingley* is distinguishable

because, as the *Tingley* Court noted, while there was a prior license between the parties, the

dispute at issue centered on two subsequent "1991 and 1994 Purchase Agreements between

the parties."[7]  *Id*. at 1214.  In this case there has been no sale or purchase.

Moreover, even if the UCC does apply, the Defendants' request for relief is

misplaced because the AIC License does not have an "open" price.  Pursuant to the AIC

---

[6] *Systems Unlimited, Inc.* was not selected for publication in the Federal Reporter and as such is not considered binding precedent, but may be cited as persuasive authority.  U.S. Ct. of Appeal 11th Cir. Rule 36-2.

[7]  *Tingley* was decided on May 8, 2007 only one month after *Systems Unlimited* and the parties had not briefed the particular UCC issue and nowhere was *Systems Unlimited* cited, it seems likely that the Court in *Tingley* may have been unaware of the recent decision in *Systems Unlimited*, finding that the sale of intellectual property is not a transaction in goods.

License, AIC agreed to report AIC product installations that included Pegasus' SSXBarcode software at the end of each calendar quarter and to pay Pegasus according to the fee structure outlined on Pegasus's website for such installations.   AIC, AHS, and Allscripts neither reported the massive amounts of installations that included Pegasus' SSXBarcode nor did AIC, AHS or Allscripts pay Pegasus according to the fee structure outlined.

The pricing information on Pegasus's website at the time of the 2002 license involved separate prices for the Basic, Standard and Professional editions of Pegasus's SSXBarcode. These versions differed based on attributions of the software.   The pricing information on Pegasus's website in 2002 identified a price of $999 for the Professional Edition of the Barcode Xpress Development Kit.  The website also identified separate pricing based on the number of installations that were licensed.  The pricing information on Pegasus's website at the time of the AIC license identified installation pricing for Barcode Xpress Professional according to the following schedule.[8]  The website indicated that customers could contact Pegasus to discuss the possibility of alternative pricing for installations of 50 or more ***if they choose to do so***. Thus, per the AIC License, AIC could have attempted to negotiate an alternative forward looking price.  In this case, however, it is undisputed that AIC, AHS and Allscripts failed to obtain alternative pricing.  The fact that AIC did not obtain alternative pricing from Pegasus years ago (which would have likely exposed Defendants' infringement or true plans) does not mean there did not exist an agreed price. It was the responsibility of AIC to initiate discussions regarding alternative pricing, if alternative pricing was desired. *See* Berlin Depo., p. 10; Puskaric, Depo., August 13, 2009, pp. 151-52. Absent such

---

[8] *See* Berlin Depo., pp. 6-7 and Ex. 2 thereto: PEG006807.

alternative pricing, the AIC License dictates the amount AIC was required to pay Pegasus, which is license fees of $226 per installation, the lowest price identified on Pegasus' website. *See e.g.,* Berlin Depo., pp. 125:5-126:8; Puskaric Depo., November 18, 2009, pp. 230:17-231:14.

## III.   **STATUTES OF LIMITATION**[9]

As evidence of Pegasus' alleged knowledge of Defendants' activities, Defendants' Motion cites brief excerpts from Mr. Berlin's deposition.  Mr. Berlin had very little role in the relationship between AIC and Pegasus in 2002-2003 (when Defendants sometimes suggest Pegasus should have known of Defendants' wrongful conduct).  Berlin Depo., pp. 31:21-32:3 ("AIC would not have been a customer that I would have been following…"); 38:16-17 ("I -- I -- I was not involved in -- 2003, of course"); 40:14; 72:22-73:5; 113:24-114:3; 115:9-14; 119:12-25; 120:9-13; 163:21-164:11 ("I knew nothing about AIC or -- back at this point in time…they dropped off my radar completely…").  John Leonard, the Pegasus employee responsible for the relationship between Pegasus and AIC, provides better evidence  with regard to what Pegasus knew or did not know about the Defendants actions in 2002-2003.  *See generally*, Leonard Depo., (Dkt. 163, Ex. E).  Mr. Leonard testified he was not aware of AIC (Allscripts or AHS) copying and distributing SSXBarcode until 2008. Leonard Depo., pp. 198:19-199:7; 200:11-21; 201:7-11; 229:9-12 ("I get paid when people report and identify sales that they've made, so I was reasonably sure at this time -- and I had been notified -- that they no longer were deploying our code"); 229:24-230:1 ("It looks like

---

[9] Even Defendants' admit that Pegasus only recently had knowledge of the Defendants' wrongful actions.  Dkt. 163, p. 8 (Pegasus filed suit "a year-and-a-half after PIC had unmistakable knowledge that Defendants were using the SSX toolkit.").

I'm moving on and at this point I'm convinced. I have been told that they no longer deploy our Barcode engine."); 232:9-14 ("At this point in time, I was certain enough that they weren't going to deploy Barcode that I told my accounting department, whether you keep their name on our reporting database or not is immaterial because this customer's dead. They're no longer deploying Barcode."); 232:21-25; 235:5-16; 237:16- 238:2; 241:4-23.

> A.     *Copyright Infringement, FUTSA, FDUTPA, and Lanham Act*

The statute of limitations for Pegasus' copyright infringement and FUTSA claims are governed by the discovery rule. *Warren Freeedenfeld Associatesk Inc. v. McTigue*, 531 F.3d 38, 45 (1st Cir.2008) (There is no presumption that failed business relationships inevitably will give rise either to tortious conduct or disregard of proprietary rights); *Home Design Services, Inc. v. Park Square Enterprises, Inc*., 2005 WL 1027370, *8 (M.D.Fla. 2005); *Taylor v. Meirick*, 712 F.2d 1112 (7th Cir. 1983) (continuing wrong theory); *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.,* 136 F.Supp.2d 1271, (S.D.Fla. 2001).  Moreover, Tim Miller (AIC's lead programmer), copied SSXBarcode into the Defendants source code ***wholesale and verbatim***, ***but has no idea when that occurred***. Miller Depo., pp. 178:18-180:13. Defendants have not produced any evidence of when a complete copy of SSXBarcode was first embedded in every copy of the infringing products distributed by Defendants.   Thus, summary judgment on the basis of the statute of limitations for the Lanham Act and FDUTPA is inapplicable because there is a genuine issue of material fact. *SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 77 F.3d 1325, 1345 (11th Cir. 1996) (In a case involving intellectual property, determining whether or not delay is "excusable," the

district court must not limit itself solely to a raw calculation of the time period involved. Rather, the court should also examine the *reasons* for any delay.).

### B.   *Breach of License*

Under Florida law, where a contract requires payments in installments, the applicable statute of limitations ordinarily starts to run on the date each payment becomes due. *See e.g., Isaacs v. Deutsch,* 80 So.2d 657, 660 (Fla.1955); *Holiday Furniture Factory Outlet Corp. v. State of Florida, Dep't of Corr.,* 852 So.2d 926, 928 (Fla. 1st DCA 2003). A contract that contemplates payments to be made at different times is analogous to an installment payment contract. *Hannett v. Bryan,* 640 So.2d 203, 204 (Fla. 4th DCA 1994). In cases analogous to this one, courts have found that because the royalty payments were due at different times, a separate and distinct cause of action accrued for each payment as it became due and the statute of limitations started to run on each payment due date. *Arlaine & Gina Rockey, Inc. v. Cordis Corp.* 2004 WL 5504978, at *49 (S.D. Fla. January 5, 2004) (citing to *Moore v. Medtronic, Inc.*, 2001 WL 1636248, *3 (D. Minn. 2001)); *Refac Financial Corp. v. Paltex Corp.*, 912 F. Supp. 159, 162-63 (E.D. Pa. 1996); *H.M. Chase Corp. v. Idaho Potato Processors, Inc.,* 529 P.2d 1270, 1272 (Idaho 1974). In *Arlaine*, the court found that under the license agreement, the defendants were required to make royalty payments and that each royalty payment is a severable portion of the contract which starts the statute of limitations running when the royalty payment was due. *Id.* Pegasus' claims for breach of contract are not barred by the statute of limitations because Defendants failed to make the payments when due under the license agreement after Defendants were required to pay Pegasus royalty fees,

and in fact did not even report installations to Pegasus to start the time ticking to make payment to Pegasus. [10]

## IV.   **FLORIDA UNIFORM TRADE SECRET ACT**

Defendants argue that there is no evidence of trade secret misappropriation.  AHS, subsequent to the 2003 acquisition of AIC, transferred, passed along and/or otherwise provided SSXBarcode to Allscripts.  AHS failed to notify Pegasus of the AIC License transfer, failed to report proper usage and took affirmative steps to misdirect and conceal actual usage of Pegasus' SSXBarcode. AIC obtained Pegasus' SSXBarcode, with unlock codes, pursuant to the license attached to the AIC License, and thereafter inserted such Pegasus software into various products, copied and distributed SSXBarcode to AIC's and Defendants' customers for years.  Miller Depo., pp. 65-68, 145-147 and 175; Zang Depo., August 6, 2009, pp. 126-129; and Dkt. 34, Ex. A.  Pegasus' expert, Matthew Decker established that at least SSXBarcode is installed and present as a result of installing Defendants' TouchChart, Impact MD, TouchWorks Scan and other variously named software and Pegasus' software was found "live" on an Allscripts TouchWorks customers' system.  *See* **Exhibit A** Expert Report of Matthew J. Decker dated December 8, 2009, p. 8.  Thus, the Defendants actually copied, distributed and misappropriated SSXBarcode, with Pegasus' proprietary keys and source code.  Further, Pegasus is awaiting production by the Defendants of its source code for TouchWorks to determine how Pegasus' SSXBarcode is encompassed within the various subset products of TouchWorks.   On January 5, 2010, this

---

[10] In fact, Pegasus has proved through an inspection at Defendants customers' offices in March 2009 that Defendants copied and installed SSXBarcode during the pendency of this lawsuit.

Court ordered Defendants to produce its source code to Plaintiff on or before January 15, 2010. To date, Defendants have not produced the source code.

Additionally, while Defendants argue there is no evidence that they have distributed Pegasus' source code, there is evidence that Defendants have Pegasus' source code and that they provide source code to their customers of TouchWorks Scan, which has been identified as one of the products containing SSXBarcode. *See* **Composite Exhibit B**, Source Escrow Agreements, A017249–A017251; A017255–A017248; A019756–A019762; A019915–A019918. Further, Pegasus' application to the Copyright Office included a letter that specifically noted the source code contained in SSXBarcode is a trade secret and was to be treated as a trade secret, and Pegasus has otherwise taken appropriate steps to limit the disclosure of the source code consistent with the application procedures.

## V.     LANHAM ACT AND FDUTPA

Plaintiff moved for Summary Judgment as to its claims of reverse-passing off under Section 1125(a) of the Lanham Act. In the event this Court does not grant Plaintiff's Motion for Summary Judgment, Plaintiff argues in the alternative that genuine issues of material fact exist as to its claims of reverse-passing off under Section 1125(a) of the Lanham Act. More specifically, it is unclear whether Defendants caused confusion among its consumers by distributing Pegasus' product as if it belonged to Defendants. Thus, Defendants' Motion fails and should be denied.

Defendant argues that Plaintiff's reverse passing-off claim under the Lanham Act, 15 U.S.C. Section 1051, *et. seq.* is legally deficient because Plaintiff fails to show evidence of a likelihood of consumer confusion or a material influence on purchasing decisions arising

from Defendants' alleged failure to attribute Plaintiff in electronic documentation. Defendant argues that Plaintiff's own expert found that the electronic documentation does attribute the toolkit to Plaintiff. While Mr. Decker acknowledges in his declaration that upon his forensic investigation he identified items such as "Copyright 1999-2000," and "Pegasus SmartScan Xpress Bar Code ATL COM Control v 3.00," Defendants misstate Mr. Decker's testimony. (*See* Decker Expert Report, p. 5). The items referenced by Defendants are so buried within the system itself that the everyday customer and user would most likely not even know how to capture the specific .dll and manipulate it in order to see the any evidence of Pegasus. Mr. Decker noted in his examination of Defendants' software, while other software manufacturers were provided attribution or credit on the log in screen, no attribution to or mention of Pegasus appeared. Dkt. 45, Ex. 4, Decker Decl., at ¶ 8. Moreover, such false designation is likely to cause consumer confusion and Pegasus has been harmed by such false designation and lack of attribution. Berlin Decl., ¶¶ 21-22. Furthermore, Jeffrey Amrein, President of AIC, testified in his deposition that Pegasus was never provided any attribution in any version of IMPACT.MD. Amrein Depo., pp. 118-119.

## CONCLUSION

WHEREFORE, Pegasus requests that the Court deny Defendants' Motion.

/s/ David D. Ferrentino
David D. Ferrentino, Esquire (Trial Counsel)
Florida Bar No: 908754
dferrentino@allendell.com
Tabatha A. Liebert, Esquire
Florida Bar No: 0124052
tliebert@allendell.com
Patrick A. Traber, Esquire
Florida Bar No: 0015802
ptraber@allendell.com

ALLEN DELL, P.A.
202 South Rome Avenue, Suite 100
Tampa, Florida  33606
Telephone: (813) 223-5351
Facsimile:  (813) 229-6682
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of January, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to:  Michael S. Hooker, Esquire, Michael B. Colgan, Esquire, Guy P. McConnell, Esquire, W. Swain Wood, Esquire, and J. Christopher Jackson, Esquire.

**/s/ David D. Ferrentino**
David D. Ferrentino, Esquire

21